IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MICHAEL BAZLEY,

       Plaintiff,                        No. CIV S-10-1343 LKK EFB P

   vs.

M. GATES, et al.,

       Defendants.                FINDINGS AND RECOMMENDATIONS

                             /

Plaintiff is a former state prisoner proceeding without counsel in an action brought under 42 U.S.C. § 1983.[1] He proceeds on his August 24, 2010 amended complaint on his claims that defendants Walker, Traquino, Aguilera,[2] and Saukhla ("defendants") were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment when they denied him medical treatment for his chronic Hepatitis C. Dckt. Nos. 11, 13. Pending before the court is plaintiff's motion for summary judgment. Dckt. Nos. 17, 37. Because plaintiff neither produces evidence of defendants' deliberate indifference nor demonstrates the absence of a genuine issue as to any material fact, the court recommends that plaintiff's motion be denied.

---

[1] Plaintiff's June 21, 2011 Notice of Change of address suggests he is no longer confined to a state prison. *See* Dckt. No. 46.

[2] While the complaint refers to a defendant "Aluilera," it appears that the correct spelling of this defendant's name is "Aguilera."

1

## I. Plaintiff's Allegations

Plaintiff claims that each of the defendants was deliberately indifferent to his medical needs when they allegedly denied him treatment for chronic Hepatitis C, despite plaintiff's requests for such care. Plaintiff also alleges defendant Saukhla, his primary care physician, prescribed plaintiff a drug called Depakote, even though Saukhla knew or should have known that the drug would significantly damage plaintiff's liver. According to plaintiff, Saukhla threatened plaintiff with punishment for refusing to take the drug. Plaintiff alleges defendants' acts and/or omissions caused him to experience emotional distress, and damaged his liver and other vital organs.

## II. Plaintiff's Motion

In his motion for summary judgment, plaintiff advances the following eight purported statements of undisputed fact:

Fact 1: Plaintiff is a 63 year old California prisoner serving a four year term with a maximum release date of July 11, 2013 and an earliest possible release date of August 3, 2011. Plaintiff has an additional three years of parole in which he will be in constructive custody as a California state prisoner. Plaintiff has been in custody as a California prisoner since July 2009 seeking medical treatment for Hepatitis C, and therefore meets the California Department of Corrections and Rehabilitation's ("CDCR") treatment time protocols to be treated for this virus. Dckt. No. 17 at 2.

In support of this statement of fact, plaintiff submits his CDCR "Calculation Worksheet," which is used to calculate the earliest possible release date for inmates sentenced to a determinate term. *Id.* at 6-7.

Fact 2: Plaintiff is infected with chronic Hepatitis C and has been in the custody and care of CDCR medical staff since July 2009. The medical staff was and is aware of plaintiff's Hepatitis C medical condition, and have denied plaintiff medical treatment for this virus since day one. *Id.* at 2.

1    In support of this statement of fact, plaintiff submits a Director's Level decision, dated
2 April 6, 2010, which responds to plaintiff's administrative appeal requesting medical treatment
3 for his Hepatitis C as soon as possible. *Id.* at 9-10. The decision notes that plaintiff's appeal had
4 been denied at the first and/or second levels of review because (1) "Treatment for Hepatitis C is
5 not given until an inmate arrives at his mainline institution, and [plaintiff] would have to be there
6 for 18 months before treatment will be started;" (2) that "[o]n September 18, 2009, lab work and
7 x-rays were ordered, and [plaintiff] was scheduled for a follow up in 30 days, to determine the
8 appropriate treatment for [his] condition;" and (3) plaintiff was transferred to California Medical
9 Facility on October 28, 2009, before Deuel Vocational Institute could address plaintiff's appeal
10 at the second level of review, and that during a phone interview, plaintiff stated he was awaiting
11 an evaluation with the doctor for the Hepatitis C Program. *Id.* Plaintiff also submits copies of
12 the first and second level responses to this administrative appeal. *Id.* at 11-15.
13   The Director's Level decision, signed by defendant Walker, denied plaintiff's
14 administrative appeal on the grounds that the appeal issues had been appropriately addressed at
15 the lower levels of review, and that plaintiff would continue to be evaluated and treatment would
16 be provided based on plaintiff's clinician's evaluation, diagnosis, and recommended treatment
17 plan. *Id.* at 10.
18   Fact 3: In 2002, the National Institute of Health updated its earlier consensus statement
19 on the treatment of Hepatitis C and concluded that all patients with chronic Hepatitis C were
20 candidates for antiviral therapy. It also recommended treatment, particularly for those with an
21 increased risk of developing cirrhosis. Plaintiff has been very sick, is suffering and has
22 continued to seek treatment. *Id.* at 2.
23   In support of this statement of fact, plaintiff submits copies of his multiple requests for
24 health care services. *Id.* at 16-23. In these requests, plaintiff complains that he is sick, has a
25 high fever, is nauseous, has yellow eyes, severe stomach pain, black stool and dark yellow urine.
26 *Id.* Some nurses' notes appear on the bottom half of the health care request forms. *Id.* at 16-23.

3

Fact 4: Dr. Saukhla, as plaintiff's primary care doctor, administered a drug to plaintiff - Depakote - to control plaintiff's seizure disorder, even though he knew or should have known Depakote was very harmful to Hepatitis C patients, with a strong possibility of being deadly. Saukhla also threatened plaintiff when plaintiff refused to continue to take the deathly drug. *Id.* at 2.

In support of this statement of fact, plaintiff submits the June 10, 2010 first level response to plaintiff's administrative appeal complaining that Depakote is harmful to patients with Hepatitis C and that defendant Saukhla had threatened plaintiff with punishment if his next scheduled blood test proved negative of Depakote. *Id.* at 25-26. The response noted that plaintiff was on Depakote for seizures, but that plaintiff's lab results revealed he had not been taking the medication as prescribed. *Id.* It states that plaintiff admitted he stopped taking Depakote because of independent research he conducted and that plaintiff requested an unbiased investigation into his medical condition. *Id.* at 26. That request was determined to be unnecessary on the grounds that plaintiff's condition was adequately and carefully monitored by his physician and the lab while plaintiff was confined to California Medical Facility and because plaintiff had been seen several times at the Hepatitis C clinic by another physician who made no mention of any concern to plaintiff's Hepatitis C liver condition. *Id.* The response also noted that Depakote (Divalproex Sodium) can be toxic when the level is above 150.0 mg/L, but that lab results showed that plaintiff's level was consistently very low.

Fact 5: The warning signs and extreme danger of administering Depakote to Hepatitis C patients is outlined in detail in "Mosby's Drug Consult 2010." *Id.* at 3.

In support of this statement of fact, plaintiff submits a typed document that states, in part, "DIVALPROEX SODIUM SHOULD NOT BE ADMINISTERED TO PATIENTS WITH HEPATIC DISEASE OR SIGNIFICANT HEPATIC DYSFUNCTION." *Id.* at 28. Plaintiff also submits physician's orders for a Depakote prescription for plaintiff, one of which appears to have been ordered by Dr. Tan. *Id.* at 29-31.

Fact 6: After repeated complaints, medical requests and sickness, "Dr. Haill" ordered a liver biopsy for plaintiff on April 23, 2010 to determine the extent of the damage that Depakote had caused to plaintiff's liver. This order followed the Hepatitis C Chronic Care Program Guidelines for Treatment of Genotype 1, Hep C, for which plaintiff had tested positive. The liver biopsy was cancelled and plaintiff was transferred to California State Prison, Solano on April 29, 2010. *Id.* at 3.

In support of this statement of fact, plaintiff submits (1) a November 12, 2009 medical record, possibly signed by defendant Saukhla,[3] noting plaintiff's history of seizures and noting "Depakote" under the "Diagnosis" heading; (2) a January 27, 2010 medical record signed by Dr. Haile, indicating plaintiff was last seen in November 20009 and was undecided about pursuing a liver biopsy at that time, but was now willing to undergo a biopsy if needed; (3) a January 28, 2010 order signed by Dr. Haile, noting plaintiff's principle diagnosis as "chronic Hep C infection," and approving a biopsy of plaintiff's liver; (4) an April 6, 2010 medical record signed by Dr. Haile indicating plaintiff was seen by Dr. Sogge and scheduled for a liver biopsy on April 23, 2010; and (5) a June 14, 2010 medical record from California State Prison, Solano, indicating plaintiff reported a high fever, lethargy, nausea, vomiting, yellow eyes, stomach pain and diarrhea. *Id.* at 33-37.

Fact 7: Plaintiff's undisputed statement of fact number seven states "CDCR Memorandum 09/22/2008 and order for liver biopys [sic] surgery 04/06/2010." *Id.* at 3.

In support of this statement of fact, plaintiff submits a September 22, 2008 Memorandum from the California Prison Health Care Services regarding the "Hepatitis C Treatment Guideline Revision." *Id.* at 39. It states that treatment for Hepatitis C genotype 1 "still require[s] a liver biopsy." *Id.* Plaintiff also submits a document titled "California Prison Health Care Services, Volume 7, Chapter 12, Chronic Care Program, Hepatis C, Chronic Care Program Guidelines,"

---

[3] The signature on the medical record is not easily read, but it could state "Saukhla."

1  which apparently sets forth CDCR's procedure for diagnosis of Hepatitis C and explains the
2  evaluation process to determine whether treatment is necessary. *Id.* at 42-61.

3      Fact 8: Plaintiff has suffered additional harm from the lack of treatment, resulting in life
4  threatening consequences. The prison population has the highest rate of Hepatitis C "virus
5  positivity and death rate of any group in the country." *Id.* at 3.

6      In support of this statement of fact, plaintiff submits a copy of his August 24, 2010
7  amended complaint. *Id.* at 63-71.

8  **III.     Summary Judgment Standards**

9      Summary judgment is appropriate when it is demonstrated that there exists "no genuine
10 dispute as to any material fact and that the movant is entitled to judgment as a matter of law."
11 Fed. R. Civ. P. 56(a). Summary judgment avoids unnecessary trials in cases in which the parties
12 do not dispute the facts relevant to the determination of the issues in the case, or in which there is
13 insufficient evidence for a jury to determine those facts in favor of the nonmovant. *Crawford-El*
14 *v. Britton*, 523 U.S. 574, 600 (1998); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50
15 (1986); *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471-72 (9th Cir. 1994). At
16 bottom, a summary judgment motion asks "whether the evidence presents a sufficient
17 disagreement to require submission to a jury or whether it is so one-sided that one party must
18 prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. "When reasonable minds could
19 differ on the material facts at issue, summary judgment is not appropriate." *Nw. Motorcycle*
20 *Ass'n*, 18 F.3d at 1472.

21     Focus on where the burden of proof lies on the issue in question is crucial to summary
22 judgment procedures. "[W]here the nonmoving party will bear the burden of proof at trial on a
23 dispositive issue, a summary judgment motion may properly be made in reliance solely on the
24 'pleadings, depositions, answers to interrogatories, and admissions on file.'" *Celotex Corp. v.*
25 *Catrett*, 477 U.S. 317, 324 (1986). Indeed, summary judgment should be entered, after adequate
26 time for discovery and upon motion, against a party who fails to make a showing sufficient to

1  establish the existence of an element essential to that party's case, and on which that party will
2  bear the burden of proof at trial. *See id.* at 322. In such a circumstance, summary judgment
3  should be granted, "so long as whatever is before the district court demonstrates that the standard
4  for entry of summary judgment . . . is satisfied." *Id.* at 323.

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.

*Id.* (quotations omitted). The opposing party must demonstrate – through evidence in the form of affidavits and/or admissible discovery material – a factual dispute that is both material (i.e., it affects the outcome of the claim under the governing law) and genuine (i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party). Fed. R. Civ. P. 56(c)(1)(A); *Anderson*, 477 U.S. at 248-50; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, n.11 (1986). Alternatively, the opposing party may demonstrate that a material fact is genuinely disputed by "showing that the materials cited [by the moving party] do not establish the absence . . . of a genuine dispute, or that [the moving] party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B); *Matsushita*, 475 U.S. at 586. As noted, summary judgment should be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 322. Thus, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.

In resolving a summary judgment motion, the court examines the pleadings, the discovery and disclosure materials on file, and any affidavits filed by the parties. *See* Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in his or her favor.

*Anderson*, 477 U.S. at 255; *Matsushita*, 475 U.S. at 587.  Nevertheless, it is the opposing party's obligation to produce a factual predicate from which a favorable inference may be drawn.  *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Matsushita*, 475 U.S. at 587 (citation omitted).

**IV.     Legal Standard for Eighth Amendment Claim Pursuant to 42 U.S.C. § 1983**

Under 42 U.S.C. § 1983, plaintiff must show: (1) the violation of a federal constitutional or statutory right; and (2) that the violation was committed by a person acting under the color of state law.  *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).  An individual defendant is not liable on a civil rights claim unless the facts establish the defendant's personal involvement in the alleged rights deprivation, as there is no respondeat superior liability under section 1983.  *Jones*, 297 F.3d at 934.  That is, plaintiff may not sue any official on the theory that the official is liable for the unconstitutional conduct of his or her subordinates.  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009).   Because respondeat superior liability is inapplicable to § 1983 suits, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Id.*  To be held liable, "the supervisor need not be directly and personally involved in the same way as are the individual officers who are on the scene inflicting constitutional injury."  *Starr v. Baca*, __ F.3d __, 2011 U.S. App. LEXIS 15283, at *6 (9th Cir. 2011) (quotations omitted).  Rather, the supervisor's participation and resulting liability could be based upon the supervisor's knowledge of and acquiescence in unconstitutional conduct by others.  *Id.*

To state a section 1983 claim for violation of the Eighth Amendment based on inadequate medical care, plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate

indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). To prevail, plaintiff must show both that his medical needs were objectively serious, and that defendant possessed a sufficiently culpable state of mind. *Wilson v. Seiter*, 501 U.S. 294, 297-99 (1991); *McKinney v. Anderson*, 959 F.2d 853, 854 (9th Cir. 1992). A serious medical need is one that significantly affects an individual's daily activities, an injury or condition a reasonable doctor or patient would find worthy of comment or treatment, or the existence of chronic and substantial pain. *See*, *e.g.*, *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992), *overruled on other grounds by WMX Techs. v. Miller*, 104 F.2d 1133, 1136 (9th Cir.1997) (*en banc*).

Deliberate indifference may be shown by the denial, delay or intentional interference with medical treatment or by the way in which medical care is provided. *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988). To act with deliberate indifference, a prison official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Thus, a defendant is liable if he knows that plaintiff faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. A physician need not fail to treat an inmate altogether in order to violate that inmate's Eighth Amendment rights. *Ortiz v. City of Imperial*, 884 F.2d 1312, 1314 (9th Cir. 1989). A failure to competently treat a serious medical condition, even if some treatment is prescribed, may constitute deliberate indifference in a particular case. *Id.* However, it is important to differentiate common law negligence claims of malpractice from claims predicated on violations of the Eight Amendment's prohibition of cruel and unusual punishment. In asserting the latter, "[m]ere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." *Broughton v. Cutter Laboratories*, 622 F.2d 458, 460 (9th Cir. 1980) (citing *Estelle*, 429 U.S. at 105-06; *see also Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004). It is well established that mere differences of opinion concerning the appropriate

9

treatment cannot be the basis of an Eighth Amendment violation. *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996); *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981).

**V.     Discussion**

Defendants contend plaintiff's motion should be denied because plaintiff produces no evidence that any of the defendants were deliberately indifferent to his medical needs, nor has he established the absence of a genuine issue as to any material fact. In this regard, it is plaintiff, not defendants, who will bear the burden of proof on the issues raised in plaintiff's motions. Having carefully reviewed the evidence submitted with plaintiff's motion and construing the facts in the light most favorable to defendants, the court concludes that plaintiff's motion must be denied.

With the exception of plaintiff's amended complaint, plaintiff's proffered evidence fails to reference defendants Traquina or Aguilera in any way. While the amended complaint alleges generally that defendants Traquina and Aguilera violated plaintiff's Eighth Amendment rights, the complaint is not signed under penalty of perjury, and does not set forth sufficient factual matter to establish the absence of a genuine dispute as to any material fact. As there is no evidence that either Traquina or Aguilera were even aware of plaintiff's alleged need for Hepatitis C treatment, there is also no evidence that either defendant responded to that need with deliberate indifference.

Plaintiff submits evidence that defendant Walker denied plaintiff's administrative appeal requesting treatment for his chronic Hepatitis C as soon as possible. However, this evidence does not establish that Walker actually knew of and disregarded an excessive risk of serious harm to plaintiff's health. Walker's response noted that plaintiff had and would continue to receive medical care, and deferred to the judgments of plaintiff's clinicians. Her response notes that on September 18, 2009, within two months of plaintiff's alleged placement in CDCR custody, x-rays and lab tests were ordered. *Id.* at 2, 9. The response states that plaintiff was transferred from Deuel Vocational Institute to California Medical Facility on October 28, 2009,

where plaintiff was awaiting evaluation with the doctor for the Hepatitis C program. *Id.* at 10. Walker also informed plaintiff he would continue to be evaluated and that treatment would be provided based on the clinician's evaluation, diagnosis and recommended treatment plain. *Id.* Walker concluded that there was no compelling evidence to warrant her intervention, as plaintiff's "medical condition has been evaluated by licensed clinical staff and [plaintiff was] receiving treatment deemed medically necessary." *Id.* Plaintiff's evidence does not reveal whether Walker had any medical training or suggest Walker should have known that the medical treatment being provided to plaintiff exposed plaintiff to an excessive risk of serious harm. Nor does the evidence suggest that Walker was aware that by denying plaintiff's administrative appeal, she would expose him to an excessive risk of serious harm.

With respect to defendant Saukhla, plaintiff also fails to produce evidence of deliberate indifference. The only reference to Saukhla in plaintiff's evidence is in the first level response to plaintiff's administrative appeal regarding Depakote, and possibly in the November 12, 2009 medical record. While the November 12, 2009 medical record could support an inference that Saukhla prescribed Depakote to plaintiff, the court must draw all reasonable inferences in favor of defendants, and it is not clear who actually signed the November 12, 2009 medical record and whether it even ordered a Depakote prescription for plaintiff. Moreover, the response to plaintiff's administrative appeal merely summarizes plaintiff's complaints against Saukhla, and also reveals that the level of Depakote in plaintiff was below the level considered to be toxic. The evidence does not suggest that Saukhla in fact denied or delayed plaintiff's requests for Hepatitis C treatment, knew or should have known that Depakote was harmful to Hepatitis C patients, or threatened plaintiff at any time.

Plaintiff's evidence suggests that he is infected with chronic Hepatitis C and has repeatedly requested medical care for this condition. It suggests that a liver biopsy was ordered, but it is not clear why the biopsy was ordered, and if taken, what the biopsy revealed. Plaintiff's evidence shows that some medical staff had knowledge of plaintiff's medical condition, but it

does not show that defendants Traquina or Aguilera shared that knowledge. And while the evidence suggests that defendants Walker and Saukhla were aware of plaintiff's medical condition, there is no evidence that either defendant was deliberately indifferent in response. It certainly has not been shown that plaintiff is entitled to judgment in his favor as a matter of law.

## VI. Conclusion

In sum, plaintiff has neither produced evidence of defendants' deliberate indifference nor demonstrated the absence of a genuine issue as to any material fact. Summary judgment cannot be granted in his favor and his motion must be denied.

Accordingly, IT IS HEREBY RECOMMENDED that plaintiff's November 2, 2010 motion for summary judgment be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated: September 1, 2011.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE